IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02611-PAB-BNB

ECHOSTAR SATELLITE, LLC, a Colorado limited liability company,

Plaintiff,

v.

SPLASH MEDIA PARTNERS, L.P., a Texas limited partnership,
SPLASH GP, INC., a Texas corporation,
MARC SPARKS, an individual, and
CHRIS KRAFT, an individual,

Defendants.

_____

## ORDER
_____

This matter arises on the following:

(1)    **Plaintiff's Motion to Amend the Complaint to Add Parties, Allegations and Claims That Were Recently Discovered** [Doc. # 54, filed 11/4/2008] (the "Motion to Amend Complaint");

(2)    **Defendants' Motion to Amend Answer and Counterclaim** [Doc. # 78, filed 1/5/2009] (the "Motion to Amend Answer");

(3)    **Plaintiffs'** [sic] **Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c), Request for Hearing, and for Sanctions** [Doc. # 84, filed 1/13/2009] (the "Motion for Protective Order"); and

(4)    **Defendants' Motion to Compel Discovery** [Doc. # 108, filed 3/3/2009] (the "Motion to Compel").

The Motion to Amend Complaint [Doc. # 54] and Motion to Amend Answer [Doc. # 78]

are GRANTED.  The Motion for Protective Order [Doc. # 84] is GRANTED as specified, and

the deposition of Charles Ergan shall not be had at this time.  The Motion to Compel [Doc. #

108] is GRANTED with respect to Interrogatory No. 10, and DENIED in all other respects.

I.

A court should freely give leave to amend when justice so requires.  Fed. R. Civ. P.

15(a)(2).  As the circuit court noted in Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir.

1993):

> Refusing leave to amend is generally only justified upon a showing
> of undue delay, undue prejudice to the opposing party, bad faith or
> dilatory motive, failure to cure deficiencies by amendments
> previously allowed, or futility of amendment.

Here, the plaintiff seeks to join two parties--Greg Schardt and George Thompson--and

add claims.  The plaintiff alleges that the bases for these amendments were not previously known

and came to light immediately prior to filing the Motion to Amend Complaint.

The defendants resist amendment of the complaint arguing that the plaintiff did

inadequate investigation prior to entering into the Master Agreement at issue in this case; there is

no factual support for the proposed amendments to the complaint; there is no personal

jurisdiction over the added defendants; amendment of the complaint is futile; and the Motion to

Amend Complaint is untimely.  Many of the defendants' arguments are factual defenses on the

merits and not appropriate reasons to deny amendment.  I cannot say as a matter of law and

based on the record before me that the proposed amendments to the complaint are futile.  In

addition, the Motion to Amend Complaint was brought promptly after the facts underlying the

proposed amendments were learned, and it is not untimely.  The Motion to Amend Complaint is

granted.

I am aware of the order of the district judge denying the plaintiff's motion for a preliminary injunction on claims brought under the Colorado Uniform Fraudulent Transfer Act, section 38-8-101, et seq., C.R.S.  The impact of that ruling on the claims in the Amended Complaint, if any, is best determined through a motion to dismiss.

The defendants seek leave to amend their answer and counterclaim based generally on the same facts which gave rise to the Motion to Amend Complaint.  Those facts were developed immediately prior to the filing of the Motion to Amend Complaint in November 2008.

The plaintiff resists the Motion to Amend Answer arguing that it is untimely, unduly prejudicial, futile, and made in bad faith.  I disagree.  The Motion to Amend Answer is timely for the same reasons the Motion to Amend Complaint is timely; there is no undue prejudice to the plaintiff under these facts; I cannot say as a matter of law that the proposed amendments to the answer and counterclaim are futile; nor do I find any bad faith.  The Motion to Amend Answer is granted.

II.

In the Motion for Protective Order, the plaintiff seeks to preclude the defendants from taking the deposition of Charles Ergan, the chief executive officer, director, and chairman of the board of Dish Network, L.L.C., and EchoStar Corporation.

Discovery is broad.  Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001).  Ordinarily, a party may inquire about any matter not privileged that is relevant to a claim or defense or reasonably likely to lead to the discovery of admissible evidence.  Id.  "Moreover, highly-placed executives are not immune from discovery, and the fact that an executive has a busy schedule cannot shield that witness from

being deposed." Id.

The burden normally is on the party seeking protection from discovery to establish good cause. Fed. R. Civ. P. 26(c)(1). Where, however, a party seeks to depose a high level executive removed from the daily subjects of the matter in litigation, the party seeking discovery must first demonstrate that the proposed deponent has "unique personal knowledge" of the matters in issue. Baine v. General Motors Corp., 141 F.R.D. 332, 334 (M.D. Ala. 1991); accord Six West Retail, 203 F.R.D. at 102 (stating that "[u]nless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a redundant deposition of [the] highly-placed executive while allowing other witnesses with the same knowledge to be questioned"(internal quotations and citations omitted)). In this regard:

> [T]he unique personal knowledge must be truly unique--the deposition would not be allowed where the information could be had through interrogatories, deposition of a designated spokesperson, or deposition testimony of other persons. . . . [S]ubordinates with equal or greater knowledge [must] first be deposed and . . . the president [can] not be deposed if he [can] contribute nothing new to the information provided by the alternative deponents.

Baine, 141 F.R.D. at 334 (internal citations omitted).

Under what has been termed the "apex doctrine," a court may protect a high executive officer from the burdens of a deposition upon a showing that (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought can be obtained from another witness; (3) the information can be obtained through an alternative discovery method; or (4) severe hardship on the deponent. Generally, the executive seeking to avoid being deposed must demonstrate by evidence that he has no unique personal knowledge. Thomas v. Int'l Business Machines, 48 F.3d 478, 483 (10th Cir. 1995); Mulvey v. Chrysler Corp., 106 F.R.D.

364, 366 (D. R.I. 1985).  The apex doctrine recognizes that high ranking and important

executives "can be easily subjected to unwarranted harassment and abuse" and "have a right to

be protected, and the courts have a duty to recognize [their] vulnerability."  Mulvey, 106 F.R.D.

at 366; see Six West Retail, 203 F.R.D. at 102 (noting that the "likelihood of harassment and

business disruption are factors to be considered in deciding whether to allow discovery of

corporate executives").

        In this case, Mr. Ergan has satisfied his burden and is entitled to a protective order

precluding his deposition at this time.[1]  First, he has provided an affidavit establishing that he has

"no personal knowledge of the circumstances surrounding the Business Television Integrator

master Agreement ('BTIMA')" (the Master Agreement at issue in this case); "was not involved

in any way with the drafting, negotiations, terms, or execution of the BTIMA"; "was not

involved in any way with the relationship between EchoStar and Splash Media or its owners at

any time"; and has "no personal knowledge regarding any facts at issue in this litigation between

EchoStar and Splash Media."  Affidavit of Charles Ergan [Doc. # 83-14] ("Ergan Aff.") at ¶5.

Mr. Ergan also states that as a result of his obligations as the chief executive officer of EchoStar,

"[h]aving to sit for a deposition . . . would be burdensome and cause undue hardship to both

myself and EchoStar."  Id. at ¶4.  Mr. Ergan also identified other senior executives at EchoStar

who were involved in the matters at issue in this case, have superior knowledge, and are

available to be deposed.  Id. at ¶¶6-7.

        Nor have the defendants persuaded me that Mr. Ergan possesses any unique personal

---

        [1]I will reconsider my order upon a showing that no other representative of the plaintiff
possesses knowledge about the matters the defendants seek through a deposition of Mr. Ergan.

knowledge important to the parties' claims and defenses. They point only to general business

statements made in EchoStar's 10Q filing and by Mr. Ergan during an industry analysts'

conference call concerning the 10Q.  There is no evidence, however, that directly ties Mr. Ergan

to any of the events at issue here.  The general business information the defendants seek appears

to be equally available from other company executives, more closely involved in the matters at

issue here.

The Motion for Protective Order is granted insofar as it seeks an order that the deposition

of Charles Ergan not be had at this time.  It is denied insofar as it seeks sanctions.  With respect

to sanctions, I find that the issue of the propriety of Mr. Ergan's deposition was a matter about

which people may reasonably disagree and that the defendants' position, although ultimately

overruled, was substantially justified.  Under these circumstances, the award of expenses and

fees would be unjust.

III.

The defendants seek to compel discovery with respect to two requests for production of

documents and one interrogatory.

Production Request No. 2 states:

> 2.   Produce all Documents reflecting or containing customer
> complaints or "customer services problems" with EchoStar IX,
> SuperDISH, or the "121 Superdish" (as that term is used at p. 21 of
> the Stipulated Scheduling and Discovery Order drafted by
> EchoStar), during the period January 1, 2003 to December 31,
> 2007.

Motion to Compel at p. 2.

Production Request No. 3 states:

> 2.   Produce all Documents that reflect any of your customers'

6

> complaints concerning installation problems, installation expenses,
> internal and field communication and customer service failures,
> other technical problems, lack or insufficient sales support for
> SuperDISH, and or customer dissatisfaction or rejection of the
> SuperDISH.

Id.

The plaintiff interposed an identical objection to both requests, as follows:

> OBJECTION:   EchoStar objects to the Request on the grounds
> that it is overly burdensome and irrelevant to the subject matter of
> this case, and is not reasonably calculated to lead to the discovery
> of admissible evidence.  EchoStar also objects to the Interrogatory
> [sic] on the grounds that it seeks information that is confidential
> and proprietary financial and customer information and violates
> the rights of third parties.  Additionally, EchoStar responds that
> any responsive information, if at all, is already within Defendants'
> knowledge, custody and control.

Id.

First, I find that the requested materials are relevant.  Relevance in discovery is broadly construed, and a request for discovery should be allowed if there is any possibility that the information sought may be relevant to the claim or defense of a party.  Johnson v. Kraft Foods of North America, Inc., 238 F.R.D. 648, 653 (D. Kan. 2006).  A request for discovery is irrelevant only where it is clear that the information sought can have no possible bearing on the claim or defense of a party.  Id.

At issue in the defendants' counterclaim is whether EchoStar breached the Master Agreement.  The defendants allege that EchoStar breached the Master Agreement as a result of continuing sales, service, and installation problems with SuperDISH.  Motion to Compel at ¶7. In support of this claim, the defendants point to a statement attributed to Charles Ergan that the SuperDISH system "had a lot of installation and service problems in the past."  Defendants'

Opposition to Plaintiff's Motion for Protective Order and Sanctions [Doc. # 87] at p. 4. Consequently, the requested materials are relevant to the defendants' counterclaim.

In its opposition to the Motion to Compel, the plaintiff has presented an affidavit establishing that it does not maintain electronic copies of complaints; that hard copies of complaints are maintained chronologically; and that it does not segregate SuperDISH complaints from other complaints. Affidavit of Rachel Dye [Doc. # 114-12] (the "Dye Aff.") at ¶4. As a result, the plaintiff estimates that it would require 729 days (approximately two years) to retrieve materials responsive to Production Requests Nos. 2 and 3. Id. at ¶6. The defendants offer no evidence refuting this assertion of burden.

Although relevant, I find that the probative value of the customer complaints is outweighed by the enormous burden and expense associated with retrieving them. Fed. R. Civ. P. 26(b)(2)(C)(iii). There are other, more direct and less burdensome ways for the defendants to discover the SuperDISH installation and service problems referred to by Mr. Ergan or otherwise claimed as the basis for their breach of contract counterclaim.[2] The Motion to Compel is denied with respect to Production Requests Nos. 2 and 3.

Interrogatory No. 10 requested the plaintiff to:

> Identify all Communications and all Documents that relate to any plan to eliminate SuperDISH, or its elimination.

Motion to Compel at p. 3.

In response, the plaintiff interposed the following objection:

> OBJECTION:   EchoStar objects to the

---

[2]For example, the defendants might request that the plaintiff produce the materials and information upon which Mr. Ergan relied in making the statement.

Interrogatory to the extent that it assumes that
Plaintiff has, or at any relevant time has ever had, a
"plan" to "eliminate" SuperDish.  EchoStar further
objects to the Interrogatory on the grounds that it is
overly burdensome and irrelevant to the subject
matter of this case, and is not reasonably calculated
to lead to the discovery of admissible evidence.
EchoStar also objects to the Interrogatory on the
grounds that it seeks information protected by the
attorney client or work product privileges and that it
seeks confidential and proprietary information.

Id.

The defendants have provided ample evidence that EchoStar had a plan to eliminate

SuperDISH.  Mark Jackson, identified by Mr. Ergan as one of the "senior executives that were

involved with the EchoStar relationship with Splash Media" and as possessing "personal

knowledge of the facts surrounding the issues in this litigation," Ergan Aff. [Doc. # 84-13] at

¶¶5-6, testified during his deposition:

Q:  Okay.  So are you getting around to the elimination or the
phasing out of SuperDISH as being referred to here in by Mr.
Ergan in Exhibit 17?

A:  Well, we--we definitely had a plan to get the mainline
consumer off of SuperDISH, yes.
                              *    *    *
Q:  . . . Do you have a recollection of when EchoStar came to have
a plan to attempt to eliminate SuperDISH?

A:  I know that we had a plan.  I just don't recall the dates
specifically.

Q:  And who was involved in formulating that plan?

A:  Myself and Mr. Ergan and Mr. Dugan and quite a bit of our
teams.

Q:  And just looking as a benchmark, the--this exhibit, Exhibit 17,
would it be fair to say it was prior to September of 2006?

9

A:  Yes.

Deposition of Mark Jackson [Doc. # 108-4] ("Jackson Depo.") at p. 62 line 23 through p. 63 line

24.

If EchoStar wants to disavow its executive's testimony, it may do so in an answer to the

interrogatory, but the interposed objection (that there is no evidence that EchoStar had a plan to

eliminate SuperDISH) is frivolous in view of Mr. Jackson's testimony.

The information sought is directly relevant to matters at issue in the defendants'

counterclaim, and the plaintiff has submitted no evidence to substantiate its claim of undue

burden with respect to this interrogatory.  Nor has the plaintiff provided a privilege log.[3]  A party

resisting discovery based on the attorney-client privilege or work product immunity has the

burden of establishing that the privilege applies.  Peat, Marwick, Mitchell & Co. v. West, 748

F.2d 540,542 (10th Cir. 1984)(holding that "[a] party seeking to assert the privilege must make a

clear showing that it applies"); Colorado v. Schmidt-Tiago Construction Co., 108 F.R.D. 731,

734 (D. Colo. 1985)(stating that "[t]he burden of proving the attorney-client or work-product

privileges rests on the person raising that privilege").  To satisfy that burden, the party asserting

the privilege must provide a privilege log that describes in detail the documents or information

claimed to be privileged and the precise reasons the materials are subject to the privilege

asserted.  See McCoo v. Denny's, Inc., 192 F.R.D. 675, 680 (D. Kan. 2000).  The information

provided in the privilege log must be sufficient to enable the court to determine whether each

element of the asserted privilege is satisfied.  Id.  Here, the plaintiff has failed to provide any

---

[3]The plaintiff makes no argument concerning privilege in its Response In Opposition to
Defendants' Motion to Compel Discovery [Doc. # 114] and apparently has abandoned that part
of the objection.

privilege log.  The plaintiff's objections to Interrogatory No. 10 are overruled, and it must provide a complete answer to the question.

IV.

IT IS ORDERED that the Motion to Amend Complaint [Doc. # 54] is GRANTED.  The Clerk of the Court is directed to accept for filing Plaintiff's First Amended Complaint and Jury Demand [Doc. # 55-2].

IT IS FURTHER ORDERED that the Defendants' Motion to Amend Answer [Doc. # 78] is GRANTED.  The defendants may file an amended answer and counterclaim in response to the amended complaint.

IT IS FURTHER ORDERED that the Motion for Protective Order [Doc. # 84] is GRANTED, and the deposition of Charles Ergan shall not be had at this time.  The plaintiff's request for sanctions in connection with the Motion for Protective Order is DENIED.

IT IS FURTHER ORDERED that the Motion to Compel is GRANTED IN PART and DENIED IN PART as follows:

GRANTED to require the plaintiff to answer Interrogatory No. 10.  The plaintiff shall provide a supplemental discovery response on or before **May 18, 2009**, that conforms to the requirements of Fed. R. Civ. P. 33 and fully answers the interrogatory; and

DENIED in all other respects.

11

Dated May 11, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge