IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-02611-PAB-BNB

ECHOSTAR SATELLITE, L.L.C., a Colorado limited liability company,

    Plaintiff and Counterclaim Defendant,

v.

SPLASH MEDIA PARTNERS, L.P., a Texas limited partnership,
SPLASH GP, INC., a Texas corporation,
MARC SPARKS, an individual, and
CHRIS KRAFT, an individual,

    Defendants and Counterclaimants.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on plaintiff EchoStar Satellite, L.L.C.'s ("EchoStar") motion for summary judgment [Docket No. 117]. The Court's subject-matter jurisdiction is premised upon the existence of complete diversity of citizenship and an amount in controversy in excess of $75,000. *See* 28 U.S.C. § 1332(a) (2006).

## I. BACKGROUND

### A. Factual Background

EchoStar is engaged in the business of providing and distributing direct satellite broadcast signals of video programming to its subscribers. Defendants Chris Kraft and Mark Sparks are involved in the production and distribution of programming content that can be distributed by carriers such as EchoStar. As part of their endeavor, defendants

Kraft and Sparks formed defendant Splash Media Partners, L.P. ("Splash Media Partners") on or about December 2, 2004.

On or about December 17, 2004, Splash Media Partners entered into a Business Television Integrator Master Agreement ("BTIMA") with EchoStar. Under the BTIMA, EchoStar agreed to broadcast television content provided to it by Splash Media Partners in exchange for payment. Initially, Splash Media Partners provided, and EchoStar transmitted, programming known as the Trader Television Network ("TTV"). TTV launched on June 5, 2005. Another of Kraft and Sparks' limited partnerships, Splash Media, L.P., is the purported entity that owns, owns the broadcast rights, produces, and markets TTV. Splash Media, L.P. is not a party to either the BTIMA or this lawsuit. On June 9, 2006, defendant Kraft notified EchoStar that, as of August of that same year, TTV would no longer be produced. On June 16, 2006, Kraft suggested to EchoStar that substitute programming, known as The Success Training Network ("TSTN"), replace TTV under the BTIMA. As was the case with TTV, Splash Media, L.P., rather than defendant Splash Media Partners, is the purported owner of TSTN.

On August 31, 2006, Splash Media Partners stopped providing TTV programming to EchoStar and, instead, began providing TSTN programming. EchoStar refused to broadcast the TSTN content. As a result, defendants Kraft and Sparks and their entities ceased making payments under the BTIMA in September 2006. EchoStar sent two default letters to Splash Media Partners. The first, dated September 22, 2006, claims that Splash Media Partners was breaching the BTIMA by ceasing to provide TTV programming content for transmission. *See* Pl.'s Summ. J. Mot., ex. 12 at 1-2. The second letter, which was dated September 29, 2006, claimed that, by failing to make

2

certain payments, Splash Media Partners was in default of the BTIMA. *See* Pl.'s Summ. J. Mot., ex. 12 at 3. In a letter dated January 24, 2007, EchoStar informed defendants that, because Splash Media Partners had not cured the previously identified payment default, EchoStar was terminating the BTIMA. *See* Pl.'s Summ. J. Mot., ex. 15 at 2-3.

### B. Procedural Background

On December 14, 2007, EchoStar filed this case [Docket No. 1], asserting six claims for relief against the defendants. On January 28, 2008, defendants filed their answer to the complaint, together with a counterclaim by Splash Media Partners for breach of contract [Docket No. 7]. In November 2008, EchoStar filed a motion [Docket No. 54] to amend its complaint, which the Court granted [Docket No. 121]. EchoStar's amended complaint [Docket No. 128] alleges seventeen claims, the first of which asserts that Splash Media Partners breached the BTIMA by failing to provide TTV content and by failing to make the required payments under the BTIMA.

Defendants filed a motion to amend of their own [Docket No. 78], seeking to amend the answer and counterclaim. The Court also granted this motion [Docket No. 121]. Defendants' amended pleading continues to include a single counterclaim by Splash Media Partners for breach of contract. *See* Answer to First Am. Compl., Countercl., & Jury Demand [Docket No. 136] ("Am. Answer") at 15-24. According to the counterclaim, EchoStar breached the BTIMA in two ways. First, Splash Media Partners claims that problems with EchoStar's distribution system resulted in the provision of service below what was required under the BTIMA. Second, Splash Media Partners

3

claims that, by refusing to accept TSTN as substitute programming for TTV, EchoStar breached good faith covenants of the BTIMA. Defendants' amended answer also asserts the counterclaim as an affirmative defense to EchoStar's claims. *See* Am. Answer at 12 ¶ 3.

On April 3, 2009, plaintiff filed a motion requesting summary judgment on:

> 1) Splash Media's counterclaim for breach of contract regarding failure to accept TSTN as a substitute for TTV, 2) Splash Media's counterclaim for breach of contract regarding alleged [distribution system] "problems," 3) Splash Media's affirmative defense incorporating its breach of contract counterclaim, [and] 4) EchoStar's claim for breach of contract against Splash Media . . . .

Pl.'s Mot. for Summ. J. Pursuant to Fed.R.Civ.P. 56 [Docket No. 117] ("Pl.'s Summ. J. Mot.") at 20. Defendants filed a response to EchoStar's motion for summary judgment. *See* Defs.' Opp'n to Pl.'s Mot. for Summ. J. [Docket No. 120] ("Defs.' Resp."). EchoStar filed a reply in support of its motion. *See* Pl.'s Reply in Supp. of its Mot. for Summ. J. Pursuant to Fed.R.Civ.P. 56 [Docket No. 126] (Pl.'s Reply"). Plaintiff's summary judgment motion is fully briefed and ripe for disposition.[1]

## II. ANALYSIS

### A. Legal Standard – Summary Judgment

According to Federal Rule of Civil Procedure 56, a court should grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see*

---

[1] Defendants have filed three motions of their own, each seeking partial summary judgment on EchoStar's claims [Docket Nos. 116, 137, 175]. The Court addresses defendants' motions in a separate order.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  In pursuing summary judgment, the moving party generally bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, on those claims which "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  However, to be clear, the party opposing summary judgment does not have the burden of disproving the movant's claim or justifying its own claim; the movant must establish a claim's merit or lack thereof.  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  A fact is "material" if, under the relevant substantive law, it is essential

5

to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

## B. Breach of Contract

Generally speaking, the elements of a breach of contract claim under Colorado law are: (1) the existence of a contract; (2) performance by the claimant or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the claimant. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).[2] The second and third elements are at issue under the present motion.

### 1. Defendants' Breach of Contract Counterclaim Regarding the Substitution of Programming

In the motion presently before the Court, EchoStar first argues that it is entitled to summary judgment on Splash Media Partners' breach of contract counterclaim as it relates to EchoStar's refusal to broadcast TSTN in the place of TTV. EchoStar's first argument in this regard is that it is entitled to summary judgment because Splash Media Partners did not own TSTN. EchoStar, however, does not explain why this is important. EchoStar makes no suggestion that Splash Media Partners was not able to provide the TSTN content. Furthermore, the BTIMA does not appear to require that Splash Media

---

[2] The parties appear to agree that Colorado law applies to the breach of contract claims in this case. The Court accepts and operates under the same premise. *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Partners own the content that it distributes through EchoStar.  In fact, the BTIMA appears to fully contemplate that Splash Media Partners might not own the broadcasted content.

The BTIMA states that "[whereas] Integrator desires to establish and/or assist BTV Networks to deliver BTV Content to BTV Subscribers, Integrator desires that EchoStar provide Transmission Services in connection therewith."  BTIMA (Sealed Document) [Docket No. 10] at 2.  Under the BTIMA, Splash Media Partners is the "Integrator"; "BTV Network" means "a corporation, business, association, or other entity, including the Integrator itself, which engages Integrator to deliver BTV Content to its BTV Subscribers using EchoStar's DBS Transmission Services"; and "BTV Content" is "the audio/video and/or data content provided to EchoStar by Integrator pursuant to this Agreement for transmission to the BTV Subscribers of a BTV Network."  BTIMA at 2, 7 ¶3.1.  Putting these provisions together, the BTIMA acknowledges that Splash Media Partners may provide audio, video, or data content from an entity other than itself in order to assist that entity in delivering the content to EchoStar's subscribers.  Therefore, EchoStar's first argument is unavailing and will not serve as the basis for summary judgment.

EchoStar's second argument on Splash Media Partners' breach of contract counterclaim is that the BTIMA did not require EchoStar to accept a substitution for TTV.  EchoStar's argument centers around a section of the BTIMA which states that

> Integrator recognizes that because EchoStar's transponder capacity is finite, EchoStar shall have the sole and absolute discretion to accept or decline any new BTV Network for which Integrator seeks Transmission Services by EchoStar.  However, the Parties agree to enter into

> reasonable good faith negotiations regarding any new BTV Network presented by Integrator.

BTIMA at 4 § 1.16. EchoStar interprets this provision narrowly to allow additional BTV Networks, not substitute BTV Networks.

"Contract interpretation is generally a question of law for the court," *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1085 (Colo. 2009), with the primary goal being "to determine and effectuate the intent and reasonable expectations of the parties." *Copper Mountain, Inc. v. Industrial Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). To this end, "the court should give effect to the plain and generally accepted meaning of the contractual language," *Copper Mountain, Inc.*, 208 P.3d at 697, while keeping in mind that this meaning will not apply where parties have given the words their own significance. *See Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313-14 (Colo. 1984) ("In the absence of contrary manifestation of intent in the contract itself, contractual terms that have a generally prevailing meaning will be interpreted according to that meaning."). Either way, "[t]he court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Copper Mountain, Inc.*, 208 P.3d at 697 (internal quotation marks omitted). Lastly, "[i]t is axiomatic that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence." *Pepcol Mfg. Co.*, 687 P.2d at 1314.

Like the interpretation of a contract more generally, the issue of whether contract language is ambiguous is decided as a question of law. *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005). "A contract is

ambiguous when it is reasonably susceptible to more than one meaning." *Public Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006). Much like standard contract interpretation, "[i]n determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meanings of the words used, and reference must be made to all the agreement's provisions." *Lake Durango Water Co., Inc. v. Public Utilities Comm'n*, 67 P.3d 12, 20 (Colo. 2003). "A mere disagreement between the parties as to the interpretation of an agreement does not in itself create an ambiguity as a matter of law." *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1085 (Colo. 2009). Finally, "[w]hen an ambiguity has been determined to exist, the meaning of its terms is generally an issue of fact to be determined in the same manner as other factual issues." *East Ridge of Fort Collins*, 109 P.3d at 974.

EchoStar appears to argue that, because section 1.16 only discusses a "new BTV Network," substitute BTV Networks are not permitted under the BTIMA. This position is unconvincing. First, even if section 1.16 does not apply to substitute networks, EchoStar's extrapolation of this provision goes too far. There is nothing in section 1.16 which can be read to affirmatively ban substitutions. Second, while the use of the word "new" could indicate that section 1.16 only addresses non-substituted networks, there is no reason to constrain it as such. In fact, under another reasonable interpretation of that section, TSTN was a new network; it was new to Splash Media Partners and new to EchoStar. Therefore, the Court concludes that section 1.16 is ambiguous and its applicability to the present case must be determined as a matter of

fact by the jury. There remains a genuine dispute regarding whether the BTIMA requires EchoStar to accept or negotiate for substitute programming.[3] Summary judgment may not be afforded to EchoStar on this portion of the counterclaim.

### 2. Defendants' Breach of Contract Counterclaim Regarding EchoStar's Provision of Services

EchoStar makes a specific challenge to Splash Media Partners' counterclaim that EchoStar breached the BTIMA by providing a sub-par broadcasting system. According to EchoStar, the BTIMA was not breached because Splash Media Partners has not identified a specific provision of the agreement which requires EchoStar to provide any particular quality of service. In response, Splash Media Partners identifies a number of potential sources of this duty. While several of these may be viable, one particular provision of the BTIMA is sufficient to defeat EchoStar's motion for summary judgment. That provision states that

> [s]ubject to the terms and conditions of this Agreement, EchoStar shall use commercially reasonable efforts to transmit the BTV Content, during the Term, from the EchoStar Uplink Facility to the BTV Subscribers via one or more DBS satellites owned and/or operated by EchoStar, or such other satellite as EchoStar may designate.

BTIMA at 8 § 3.2(c). Splash Media Partners contends that EchoStar did not use the "reasonable efforts" required under this section of the BTIMA. Therefore, because

---

[3] Even the term "BTV Network" is ambiguous in the context of the executed BTIMA. As the Court noted above, the BTIMA defines "BTV Network" as "a corporation, business, association, or other entity, including the Integrator itself, which engages Integrator to deliver BTV Content to its BTV Subscribers using EchoStar's DBS Transmission Services." BTIMA at 7 § 3.1. TTV and TSTN appear to describe a collection of programming rather than separate entities which would qualify as "BTV Networks." However, the "Network Term Sheet," which is attached to the BTIMA, appears to consider TTV to be a "BTV Network." Under "Network Information," the Network Term Sheet lists "Traders Television" as the "Company Name." BTIMA at 21.

Splash Media Partners has identified the provision which EchoStar claimed did not exist, EchoStar has failed to meet its initial burden at summary judgment in identifying a lack of evidence or legal support for the defendants on an essential element of their claim. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). EchoStar is not entitled to summary judgment on this claim.

### 3. The Solvency of Splash Media Partners

EchoStar claims that "[i]n light of the fact that Splash Media [Partners] was, at all times, a shell entity with no assets, liabilities, or operations, Splash Media [Partners] was in breach of the BTIMA the moment Chris Kraft signed the BTIMA and the Network Term Sheet." Pl.'s Summ. J. Mot. at 16. According to EchoStar, this alleged breach precludes Splash Media Partners from asserting any breach of contract counterclaim.

EchoStar bases its argument on a provision of the BTIMA which states that "[t]his agreement shall terminate immediately upon written notice from EchoStar to Integrator in the following events: (i) Integrator becomes insolvent . . . ." BTIMA at 9 § 3.4(b). Splash Media Partners responds by challenging EchoStar's conclusion regarding Splash Media Partners' insolvency. However, in light of defendants' repeated admissions that Splash Media Partners has little or no actual assets, it would be difficult to avoid the conclusion that it was insolvent. *Cf. Lowell Staats Min. Co., Inc. v. Pioneer Uravan*, 878 F.2d 1259, 1266 (10th Cir. 1989) ("Colorado courts treat insolvency as a fact question based on several factors. These factors include: whether a debtor, in the ordinary course of its business, is able to pay its debts with money or by application of its other assets; whether the debtor has so little property left after the alleged fraudulent

conveyance that its creditors' ability to collect their debts through judicial process is impaired; and the type of business in which the debtor is engaged.").

The BTIMA, however, does not characterize Splash Media Partners' insolvency as an event of default. There is no express promise, representation, or warranty in the BTIMA that Splash Media Partners was not or would not become insolvent. *Cf. Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 148 (Colo. 2003) ("[A] breach of contract claim . . . arises when one contracting party *breaks a promise*." (emphasis added)). In fact, the section of the BTIMA which directly follows the insolvency language is entitled "Representations, Warranties, and Covenants." *See* BTIMA at 9 § 3.5. There is no language regarding Splash Media Partners' solvency in this section of the BTIMA.

Rather, section 3.4(b)(1) gives EchoStar the right, upon learning of Splash Media Partners' insolvency, to terminate the BTIMA by providing written notice of termination. There is no evidence in the record that EchoStar ever provided such notice. Given that EchoStar has not demonstrated that Splash Media Partners has breached the BTIMA due to insolvency, EchoStar fails to provide any basis for the Court to preclude Splash Media Partners from bringing its breach of contract counterclaim.

### 4. *Splash Media Partners' Affirmative Defense*

In its motion for summary judgment, EchoStar contends that, because Splash Media Partners' breach of contract counterclaim fails as a matter of law, defendants cannot rely on that counterclaim as an affirmative defense. With the demise of EchoStar's initial premise, its contingent conclusion also fails. Therefore, the Court

denies EchoStar's request for summary judgment on the affirmative defense which incorporates the breach of contract counterclaim.

### 5. *EchoStar's Breach of Contract Claim*

EchoStar's motion for summary judgment also seeks judgment as a matter of law on its own breach of contract claim. EchoStar's sole argument in support of its breach of contract claim is as follows: "If this Court grants summary judgment on [Splash Media Partner's] breach of contract counterclaim and grants summary judgment on [Splash Media Partner's] affirmative defense based on its breach of contract counterclaim, then there can be no genuine issue of material fact regarding whether any breach by EchoStar excused [Splash Media Partner's] performance." Pl.'s Summ. J. Mot. at 19. The noted contingencies did not come to pass, EchoStar provides no additional support for this part of its motion, and the Court sees no basis to grant EchoStar the relief it seeks.

## III. CONCLUSION

Based on the foregoing, it is

**ORDERED** that plaintiff EchoStar Satellite, L.L.C.'s motion for summary judgment [Docket No. 117] is DENIED.

DATED September 29, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge